Our first case for argument today is 2017-1817, Assa Abloy v. Spectrum Brands. Mr. McKeon, please proceed. Good morning, ma'am. Please, the court. The primary issue on appeal is whether the board exceeded its authority in denying due process by finding in its final written decision the claims unpatentable based on a contention never raised by Spectrum. This is why in the final written decision the board found it necessary to recast the contentions that were made by Spectrum. The board agreed with us that the Nielsen reference did not disclose steps A and B in the order required. But the board nevertheless found that there was motivation to modify the reference, modify that figure 3 to find the claims unpatentable. In the blue brief at 4, you say Claim 1 is representative of most of the claims on appeal. Which ones aren't represented by Claim 1? I think, Your Honor, this point I'm making here about A, B, it's Claim 1 and its dependents. This does not apply to 14 and to 30. This particular point where we believe the board went off the rails and created a new argument that was never presented applies just to Claim 1 and its dependents. So all the appeal claims rise or fall with Claim 1? We've made that contention. They don't seem to dispute that point. Although this particular point I'm making here about steps A and B does apply to Claim 1 in particular. And I think it's important to really look at the timeline and the way things progress through the IPR. Of course, the petition was filed and we had two grounds and we had claim charts attached. And for all the elements, you had these two references, Nielsen and Karkos. Nowhere in the petition did Spectrum say that if something was not disclosed, there's never less motivation to modify Nielsen in the manner that meets the claims. In particular, the step A and B point. And then the institution's decision comes out. It seems to me your primary argument is that the PTAB violated the APA because you weren't on notice that it was considering whether the asserted claims would have been obvious over Nielsen alone. That's sort of the primary umbrella argument, Your Honor. But I think the one that's particularly problematic in our view is one that they created in the final written decision that no one argued. This was the issue that, well, you know what, we agree with you. We agree with you that Nielsen does not disclose A and B because they were arguing that. They argued in the case that, first of all, they said the order of steps didn't matter. But the PTAB's references to combining Nielsen and Karkos are limited to Claim 7 and 21, right? The combination was 7 and 21. That's correct. And they're not an issue on this appeal. Well, it is in the sense that the broader issue we've raised in our briefing is that when they decided not to institute on their second round, they were doing a combination case, which was both Nielsen and Karkos in combination disclosed all the elements. And we believe that when they made that decision, they needed to proceed throughout the entire IVR on that basis. And then at the end, of course, they had a Nielsen-only finding. But again, Your Honor, I think really that's why I want to focus on A and B because that was the one that they just came out with at the end of the case. And they said that, well, we agree with you because the whole case we were arguing that Nielsen did not show A and B. We had a big argument with these guys on that. And at the end of the case, we get the final decision. And they say, yeah, you're right. It doesn't show that. But it's obvious because you'd be motivated to modify it. That came out of left field. And that really is the fundamental problem we think requires correction by this court. And we think the SAS opinion from the Supreme Court is very helpful here. The majority opinion talks about the inquisitorial inquisition process, if you will, the old way we did it. The post-grand procedures of the old way was the patent office sort of drove it. But the new way is an adversarial process. And there's contentions of the parties. And the petitioner drives the process through their contentions. Not the director. The petitioner drives the process. And here we think the board did something totally different. I'm just willing to bet that your opposing counsels say SAS is very helpful to them. Everybody seems to think SAS is very helpful. Well, we're going to have a lot of interesting discussion on that, I think, over the coming months and years perhaps. But I think for this case in particular, though, the statements regarding who's doing what in the process. And the director is not the one that's making the contentions. The director is not the one that's driving it. It's the petitioner. And that's the point that we tried to make in our supplemental submission. And in the Magnum Oil Tools case as well, where this court said, you know, in terms of the issues, it's not the board that raises the issues and argues the case. It's the petitioner and the petition. And that's where we think the problems here were particularly poignant. In terms of the precedent here, I mean, we think the fact that the board alone came up with this argument at the end, we think that's it. It requires a reversal on that basis. But, of course, this court's precedent is clear that in this court's SAS decision, you can't change theories midstream. And in that particular case, we had a new claim construction at the end. In the Dell case that we cite, an oral argument, there was a particular figure, and everyone was pointing to one element. But an oral argument, they started pointing to another element or some caddy limitation. And this court said, no, you can't do that. Notice an opportunity. And finally, in the Nuvesi case we cite, I think it's very persuasive here, same drill. It's a figure 18. People were looking at figure 18, but they didn't cite it for the particular proposition that they did in the petition. And in the reply, they came up with a new— If we disagree with you about your process argument, is there sufficient—is there substantial evidence that supports the board's determination that Nielsen, in his skill of artisan, would disclose all of these elements? We don't believe so, Your Honor. I mean, it is Spectrum that was the part that should have provided that substantial evidence to modify Nielsen in the way where steps A and B could be modified. And we know, because they never argued that, we know they didn't provide the substantial evidence. It didn't come from them. And if you look at the board's decision in A19, they have a cite to an expert, their expert. That cite doesn't support the proposition that would be obvious because they weren't arguing to modify Nielsen. They were saying Nielsen disclosed it. So we think there's no substantial evidence, in particular on this A-B point, this step point that the board came up with at the end. So no, we think that there's no substantial evidence to support this finding if you don't agree with us on the process point. Well, on page JA19 of the PTO decision, which you've referenced a couple of times, isn't the reference to the expert testimony, I think that's Exhibit 1004, Paragraph 29. Right. Isn't that where the expert, Dr. Green, was explaining that you initially store access codes and then repeat the process to replace previous? There's a dispute between the parties of whether the reference discloses the same access code being transmitted multiple times or replacement access codes, i.e. different access codes. And I believe that's where Mr. Green was saying that he reads Nielsen as disclosing different access codes, a separate code that would be sent if the first code was lost or stolen or something. Is that a fair understanding of what he's talking about? Yeah, that's true. We had a dispute about, you know, we were saying when that Paragraph 128 in Nielsen, the access code, it was actually meaning the repeating sending that was the same access code. So we had an argument about that. And that's the context of the cite the board made. But, Your Honor, I think it's important to look at a paragraph up where the board says, thus, we agree with the patent owner that Nielsen teaches a process different from the steps recited in Claim 1. Actually, what it says is specifically figure three of Nielsen. It doesn't show the process is iterative. True. So it doesn't say, I don't know, I'm looking at it, both sentences seem limited to figure three. I'm not exactly sure what to make of the paragraph anywhere where they say, nonetheless, I'm not entirely sure, Mr. McKeon, whether they're finding obviousness to modify Nielsen or where they're saying, but Nielsen, other than figure three, along with Dr. Green's testimony, makes it clear to us that Nielsen is sending replacement access codes. And as such, Nielsen is disclosing an iterative process. And if that's true, then Nielsen is disclosing steps B and A being performed in that order. So I guess I'm not positive that I read the board, how to read this portion of the board's opinion, whether it is an obviousness determination, which might be beyond the scope of the petition, or whether it's actually a finding that Nielsen, by virtue of disclosing an iterative process, is in fact disclosing the steps in reverse order. So why don't you respond to that? Well, Your Honor, I just take a different view of what it says here. I mean, at the beginning of this opinion, it's talking about recasting the arguments. I mean, the board even says that. They say, well, we're recasting the arguments that Spectrum's making. And if we didn't have— Where did they say the recasting? Recasting, Your Honor, let me give you the exact page number. I'll just quote. We further exercise our discretion to recast the challenges presented in the petition in view of the specific prior actually relied on for the challenge claims. And then we go and we read the part we read here where they agree with us. And that statement in context means that Nielsen doesn't disclose it. And you're right, Your Honor, it refers to figure three. But the debate here was figure three. That was the centerpiece of the debate, was figure three. And the reference in paragraph 128 of Nielsen about resending the—periodically sending the access code. And so then we go on to the next paragraph. And, Your Honor, I submit to you that whether it's modifying the figure, and we think in fairness that's what they're doing here, or simply saying, oh, it's obvious. I think either way we have a problem because they're arguing that it was literally disclosed. And we know from A19 of the opinion that they did not agree with the petition on that. They did not agree with the petition on that. They did not agree with the petition that it was literally disclosed in figure three. Do you think that that means that the board is stopped by SAS from concluding that it is literally disclosed in the relevant text of the Nielsen reference that everyone has been arguing about when the expert says that text says it's iterative? Even if figure three doesn't particularly disclose that the text says it's iterative, which means after step B, later step A is going to get performed again, and therefore you have B-A instead of A-B. Do you really think that the board is stopped by SAS from reaching a conclusion like that when it's the very relevant text and document and prior art that everyone is talking about? Well, I do, Your Honor, and I think that's consistent with this court's case law. When you're looking at the same figure, in these cases we've cited, if you're looking at the same figure, you're just pointing to something different. Where's the line? And I think what SAS is telling you, it's up to the petitioner. And the petitioner said again and again, despite figure three saying start and stop, which is what figure three says, start and stop, it was up to them to say, okay, even though it's not literally disclosed, one of the owners is going to be motivated to modify the figure based on the disclosure. I don't see where they say one would be motivated to modify the figure. I guess I'm still at the point where I'm not sure what that second paragraph means, but I think it might mean that Nielsen discloses B-A. I'm not positive, but I don't see where it goes as far as you're saying that we have to modify the figure to get to that. I'm in my – Go ahead. If you want to respond, please do. Your Honor, we'll just take a different view of the context here of how this all – the argument, how it was developed, how it was argued. And there was a lot of discussion in the briefing and at the hearing below about what Nielsen disclosed. And when the board makes a stark statement that, yeah, this is not disclosed, we agree with you, then everything else that follows is a rejection of their argument and something different than what they argued. Okay. Why don't we hear from the closing counsel, and I'll restore your rebuttal time. Thank you. Good morning. I'm here to support Michelle Armand from Kenobi Martins representing the Applebee's Spectrum Brands. I wanted to address a couple points raised by Ellen's counsel and their argument. The first argument was that the board found that Nielsen does not disclose steps A and B in Claim 1, and that is not supported by the record. That is not what the board found. If you look in the record at Joint Appendix 19, what the board found was that although Figure 3 by itself did not disclose the steps A and B in the recited order, Figure 3 together with Paragraph 128 of Nielsen did disclose performing those steps in the recited order because Paragraph 128 teaches that that process in Figure 3 is performed repeatedly every time a credential is updated. And, of course, Paragraph 128 of Nielsen is describing the exact Figure 3 that we're talking about here. But the board's language doesn't really support what you're saying. I definitely agree with you that the preceding paragraph is only Figure 3 if Nielsen doesn't show it and doesn't preclude the board from finding something else that Nielsen does. Whether that exceeds the scope of the position or not, I don't know. But the second paragraph, the one that I was questioning counsel about that I'm not really sure how to read, says, nonetheless, we find Nielsen suggests. It doesn't say discloses. But then the worst thing, I think, for you is the thus sentence. Are you familiar with the thus sentence on Page 19? Right after they talk about Paragraph 128, they say thus, we determined that a skilled artisan would have found it obvious to initially store the access codes and thereafter repeat the process in the flow chart of Figure 3. They don't say Nielsen disclosed it. They said it would have been obvious, enlightened Nielsen. And that, to me, is, I think, your most difficult crux. It's a poorly worded paragraph, for sure, and I'm not positive what it means. But can you address why that doesn't preclude you from the argument? Not preclude, but why that doesn't discount the argument you're making? Well, what the board was saying here is that when the disclosures of Nielsen, Figure 3 and Paragraph 128 together are considered, it makes it clear that Figure 3 is being repeated. And so they are relying on the express disclosure in Paragraph 128 that says that the access codes are transmitted periodically to replace to show that Nielsen teaches that you would repeat Figure 3 over and over again. OK, well, then let's look at the last sentence of the same paragraph, which is, I think, equally bad for you as the thus sentence, which you still haven't explained how I sort of ignore the fact that they said would render it obvious as opposed to teaches it explicitly. They know how to say when something teaches it explicitly. They do it in this opinion throughout. And so when they said it would render obvious, my thus sentence, you didn't respond at all to my question because the board knows the difference between something rendering something obvious and something explicitly teaching it, and they chose different language. I don't know what to make of that, but I'll give you another chance to try your hand at it. But the last sentence is equally difficult to contend with of that paragraph, because it says Nielsen, it ties Nielsen Figure 3, which is, which references how access codes management system administers the access code and then it cites Paragraph 128. And then it says, thereby providing a suggestion and motivation to modify Nielsen's teaching so as to repeat the process of Figure 3 when replacing previously stored access codes. That, again, sounds like not explicitly disclosed language, but rather obvious language. And so definitely address this, but then maybe you want to move afterwards to the point about why it would be okay for the board to go beyond just, I don't know that you're going to convince me on this point, but I want you to try. But then you better move on to why if you don't convince me on this point, it's nonetheless okay for the board to do what it did nonetheless. Do you understand? Yes, Your Honor. Okay, so go ahead. So when the board, first on the thus sentence, when the board says thus we determine that the skilled artisan would have found it obvious to initially store access codes and thereafter repeat the process, what they're not saying is that Nielsen is missing that limitation. What they're saying is we look at Figure 3, we don't see that process being repeated. When you go to Paragraph 128 in Nielsen, which discusses Figure 3, we know from reading that disclosure in Nielsen that that process, of course, has to be repeated because you're updating the access codes. So what I think they're articulating here and there is that Figure 3 by itself does not disclose the steps being performed in the recited order, but reading Figure 3 with Paragraph 128 and modifying Figure 3 based on the express teaching in Paragraph 128, then we get there and the claims are satisfied, they're shown in the recited order. So I think the only thing that's being modified here is Figure 3. The board never explicitly found Nielsen doesn't teach this at all. We need to go out beyond Nielsen and look at the knowledge of one skill in the art to fill in the gap. When they filled in the gap, they relied on Paragraph 128 of Nielsen. They didn't go beyond the scope, beyond the four corners of Nielsen. Is there a difference between going outside of Nielsen to find what a skilled artisan would conclude and looking at Nielsen to find what a skilled artisan would conclude? I think so. I think there is an obvious argument you can make which says the prior art does not teach this limitation. However, the background and knowledge of one skill in the art, you would know to perform that step. So how I understand Appellant's argument is they're contending that Nielsen does not disclose. But if that's the case, wouldn't they have just said Nielsen discloses this rather than a skilled artisan would have concluded from reading Nielsen that this would be obvious? I think the reason the board chose this particular language was because – You know what? I'm going to – you don't need to answer that. I think I agree with Judge Moore that I'd like to hear you talk about why this matters at all. Correct. So the instituted ground for Claim 1 was obviousness based on Nielsen. And so – Let me just interject a question on that. You say – and I raise this with your opposing counsel – that the only claim limitations not taught by Nielsen were independent Claims 7 and 21. And we had that colloquy about that. But the petition includes claim charts. And I'm looking at the appendix at 95, and the claim chart discussing the preamble to independent Claim 1 discusses carcass. So is that preamble to independent Claim 1 limiting? And if not, how do you reconcile your statement? There was no argument below whether or not the preamble was limiting. So if you look at the claim charts, the claim charts focus on Nielsen and its disclosures. And some of the limitations other than Claims 7 and 21 where we did rely on Nielsen's teachings that are not at issue on appeal do have a string set at the end that says see also Exhibit 1003. But if you look – and I'm at Joint Appendix 92 – when we described what we were doing in the claim charts, we said Nielsen discloses nearly all of the limitations of the challenged claims. And the missing limitations are supplied by carcass. Those differences are specifically described below. And then we talk about 7 and 21. So our position, which we made clear in the petition and the board also recognized in its institution decision, was that we were only relying on carcass' teachings for Claims 7 and 21. If that answers your question. I would like to go back to – Yeah, go back to it. I wanted to address Judge Moore's question. So as I was saying, the instituted ground here was obviousness based on Nielsen. And when we presented our petition – So just out of curiosity, do you think it would be okay for the PTO – if you say we are challenging obviousness based on Nielsen and then you have a claim chart wherein you indicate that you actually believe that it's pretty close to anticipation and you think every element is in fact disclosed. But then suppose at the end you have a catch-all. And if you don't think these elements are disclosed where we say they are, then they would nonetheless be obvious in light of what we say. Is that sort of where you're going with this? Is that what you think that you have done here to put the other side on notice that we actually think a particular element is in fact disclosed? But if it's not, it would be obvious in light of what is in fact disclosed. That is exactly what the claim charts were doing. So if you look at step A and step B, what we said is we believe that Nielsen discloses those limitations. And we pointed to the disclosures. In fact, and I'm looking at – But at this point, you were arguing it discloses it because A and B don't have to be performed in order. Our reading of the claim in the petition stage was that there was no particular order because this was a method claim, which usually, of course, do not have an order imposed unless there's an antecedent basis. And there was no antecedent basis. So after institution, when appellant proposed this claim construction and it came out of left field, our response was, well, even if there is a particular order, it doesn't matter. Because based on the same disclosures in Nielsen that we cited in our petition at Joint Appendix 95-96, you'll see Paragraph 128 and Figure 3 there. It doesn't matter because that process of updating credentials is performed repeatedly, and it's going to perform those steps in either order. So based on the claim charts at Appendix – Joint Appendix 95-96, I mean, when the board found it obvious, it found these limitations obvious. Over the identical disclosures, we had put in our petition and put appellant in on notice. So any suggestion that this came out of left field, it didn't. And the only reason that this issue was even raised was because of appellant's related claim construction it provided after institution. So I think they were fully on notice on this. Just out of curiosity, what do you think that the board meant by that recast sentence the opposing counsel read to us? We're recasting petitioner's arguments in this case, which it then said it has the discretion to do and cited a case. In light of SAS, I think the level of discretion the board has is now a question mark. Correct. And so what do you think they meant by that? When the board said, I believe it's Joint Appendix 10, that they were recasting, they did not mean that they were changing the grounds. So our position from the beginning was for all of the claims, except for Claims 7 and 21, they were obvious over Nielsen alone. And so what the board said, and the reason they put this in was because appellant came to the final hearing and professed confusion about the scope of this IPR, is they explained what they had done back in their institution decision. So if you turn in the record to the institution decision, the board had, I'm looking at Appendix, Joint Appendix 516. What the board said there, when they instituted based on Nielsen and Karkas' for the appealed claims, were considering them based on Nielsen alone. And there's a point heading there that says, obviousness of the appealed claims based on Nielsen. And then if you turn the page to Joint Appendix 518, then for Claims 7 and 21, the point heading is obviousness of Claims 7 and 21 based on Nielsen and Karkas. So when the board summarized in the final written decision what they did, and they called that the recasting, what they're doing is simply summarizing what they explicitly did in the institution decision. So there was no change. They were not switching grounds. And of course, the institution decision tracked what we had presented in the petition as well. The last point I wanted to address was SAS. Appellant has argued that SAS somehow has an impact on this case. SAS has the simple holding that all of the claims that are challenged in the petition must be considered by the board and rendered. I'm not sure the holding of SAS is anywhere near as simple, but I'm also not sure it's relevant to this case. Yeah. But anyway, it does not apply to this case simply because all of the claims are challenged. We're excited to file a written decision. OK. Thank you. So unless you have further questions, I'll save the rest of my time. Thank you very much. Let's restore Mr. McKeon's rebuttal time, please. Give him three minutes. My law professor used to say, when a lawyer says merely to you, you better do this. More clearly. More clearly. Just on the SAS point, I mean, there's a question about whether all grounds are going to be required now in the institution. I think that's a debate that we'll have going forward. But I do want to just quickly address what happened below. I think that's important. We've submitted our patent owner's response, and we said, wait a minute, you know, order of steps is real important here. A, B, you've got to have them in that order. And figure three is start, stop. There's no suggestion that it's an iterative process. So we submitted our response, and in the reply, they came back and said unequivocally that Nielsen discloses this feature. And it made this iterative argument that despite the start, stop, you do it iteratively. And that was a highly contested issue at the hearing as well. So then in that context, when we get to page 19 and 20 of the board's final decision, we have the paragraph we talked about before where we agree with you, the patent owner. But nevertheless, we go on. And the concluding statement, which is actually on page 20, and I think Judge Warren, you read it, providing a suggestion and motivation to modify Nielsen's teachings. And so it's to repeat the figure three process. And that's something that was never argued. It's just plain and simple. They just didn't argue that point. And it's important because it's not inconsequential because whether something discloses it literally or whether it's motivation to modify, the case we present is completely different. Our experts would have put on a different case. Our cross-examination, their expert would have been different. Presentation of the board would have been different. We would look for other references or disclosures that would teach against that conclusion. But this wasn't an anticipation case. The board expressly initiated for the claims at issue based on Nielsen alone. It only went to Carcass for 7 and 21, right? We have a dispute about the way that all went down. But yes, I mean, I think in the end of the day. I mean, you read the institution decision. It's pretty clear the reason they didn't have a separate ground is because they said this is already subsumed in the claims we're instituting on, which is Nielsen alone for the vast majority of the claims. So you were on notice, at least, that it was an obviousness issue, not an anticipation. That could be a fair point. But OK, we're on notice it's obvious. But boy, there's a lot of work to get from that to the end of the case where the specific nature of the allegation and the contention. OK, why is it obvious? You've got to get there. Very briefly, what additional evidence would you present if we were amended? Well, our expert would put in a declaration and say, wait a minute, the figure 3 and the 128, there was no motivation to modify there. You never identified any additional evidence in that? We didn't know we were fighting a motivation to modify case. They were saying he was there all along. So we didn't go down that road. And we have limited page limits, limited time. And we're going to fight the battle that we're fighting. We're not going to fight a battle we don't think we need to fight. Unless there's any amount of time and any questions, I thank the court. OK, I thank both counsel for their arguments.